IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO CERTIFICATE NO. Z178324-004APD, <br><br> and <br><br> AMLIN UNDERWRITING, LTD. <br><br> Plaintiffs, <br><br> v. <br><br> DEOL TRANSPORT, INC., <br><br> Defendant. | 1:18-cv-1383 (LMB/JFA) |

MEMORANDUM OPINION

This Memorandum Opinion constitutes the Court's factual findings and conclusions of law following a bench trial of this declaratory judgment action brought by plaintiffs Certain Underwriters at Lloyd's, London Subscribing to Certificate No. Z178324-004APD and Amlin Underwriting, Ltd. (collectively, "Certain Underwriters" or "plaintiffs") against defendant Deol Transport, Inc. ("Deol Transport" or "defendant"), in which plaintiffs seek a judgment stating that an insurance policy they issued to defendant does not cover defendant's claim for damage to its vehicles because the employee driving the vehicles was not a covered driver under the policy. For the reasons that follow, the Court finds that the policy does not cover defendant's claim.

I. FINDINGS OF FACT

A. **Uncontested Facts**[1]

---

[1] The parties do not dispute, and the Court finds, that it has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332—because plaintiffs' principal place of business is in

The parties do not dispute the following facts, which the Court finds have been established. Plaintiffs are an insurance syndicate. Complaint ¶ 1, 3 Defendant is an interstate trucking company. Id. ¶ 2. On February 21, 2018, defendant, through its owner Gian Singh Deol ("Deol"), applied for insurance coverage for four of its vehicles and two of its drivers, Deol and Rajesh Kumar ("Kumar"). DTX 3, at 1.[2] The application, which was signed by Deol, indicated that he had five years of driving experience and that Kumar had three years of driving experience. Id. As a result of this application, plaintiffs issued an insurance policy for automotive property damage to defendant ("the policy"). DTX 1, at 1. Defendant obtained the policy as a member of Continental Trucking Association ("Continental Trucking"),[3] and with the assistance of National Insurance Agency, Inc. ("National Insurance").[4] Id.; PTX 2, at 1.

The policy provided, in relevant part, that "[i]n consideration for the premium paid hereon . . . the Underwriters hereby agree to indemnify the Assured against direct and accidental loss or damage to the Automobiles specified in the schedule herein, during the Period of Insurance specified in the schedule." PTX 4, at 8. Among other automobiles owned by

---

London, England, defendant's principal place of business is in Haymarket, Virginia, and the amount in controversy is approximately $150,000—and pursuant to 28 U.S.C. § 2201—because this is a declaratory judgment action. The Court also finds that it has both personal jurisdiction over defendant, and that venue is proper, because defendant's principal place of business is within this district.

[2] Citations to "PTX" and "DTX" refer to plaintiffs' and defendant's trial exhibits, respectively.

[3] Plaintiffs issued both a master insurance policy to Continental Trucking and an individual insurance policy to Deol Transport. See PTX 11, at 1; PTX 4, at 1. The certificate number of the former was Z178324-004APD, and the certificate number of the latter was Z178324-005APD. Id. There are no relevant differences between the two policies.

[4] Deol received the policy and other documents from National Insurance, and largely communicated with plaintiffs and Continental Trucking through National Insurance. Deol utilized National Insurance as his broker because it employed individuals who were competent in both Punjabi, Deol's native language, and English.

2

defendant, the policy schedule included a 2017 tractor with the Vehicle Identification Number 3AKJGLDR7HSHD9415 ("the 2017 tractor") and a 2016 trailer with the Vehicle Identification Number 1UYVS2531GU688819 ("the 2016 trailer").[5] DTX 1, at 2. The 2017 tractor was insured up to $135,000, and the 2016 trailer was insured up to $55,000. Id. The policy also provided that "strict compliance with the conditions and/or warranties contained in the contract of insurance is required," and that "if [the insured] do[es] not strictly comply with the conditions and/or warranties contained within the contract of insurance, then the insurer, Certain Underwriters at Lloyd's, may deny or limit coverage for any claim." PTX 4, at 7.

Although not contained within the section labeled "Exclusions," the policy contained a provision entitled "Driver Criteria" ("the Driver Criteria provision"), which stated:

> Every driver must have his/her Motor Vehicle Report (MVR) approved by Continental Insurance Agency within 7 days of their employment with the subject trucking firm. They must comply with the following Driver Criteria, and have a Single Valid Full Commercial Driving License, endorsed for the specific type of equipment operated at the time of loss or damage. <u>If any of the Driver Criteria, including the following, is not fully complied with, then the driver is not acceptable or approved and will result in any claim or loss involving such unacceptable or unapproved driver as being not covered for any and all coverage's [sic] that might otherwise have been applicable</u>. . . .

Id. at 14 (emphasis added). Among the specific criteria listed in the Driver Criteria provision was a requirement that a "Driver must have a Minimum of two years [sic] Commercial Truck Driving Experience." Id.

---

[5] These two vehicles were listed on defendant's initial application for coverage. DTX 3, at 1.

3

The policy issued to defendant also contained a "Declarations Page" ("the Declarations Page")[6] and an endorsement, which repeated the requirement that drivers must satisfy the policy's driver criteria to be eligible for coverage:[7]

E. Drivers

All drivers must meet minimum policy requirements as set forth by your policy (see attached minimum driver criteria) before they are hired. <u>All qualified drivers must be reported immediately upon hiring. Unreported drivers could cause cancellation of policies or result in an unpaid claim.</u> . . .

DTX 1, at 5 (emphasis added). The policy, including both the Driver Criteria provision and the Declarations Page, was in effect throughout March 2018. PTX 4, at 4.

In addition to these policy documents, Deol signed two documents that he received from his broker, National Insurance. The first document, entitled "Agreement to Report All Drivers and Vehicles to Policies," stated:

This is a guideline of all commercial vehicle insurance carriers and a condition for all insured's [sic] to abide by. . . .

Your commercial insurance policy (Liability, Cargo and Physical Damage) requires:

All drivers must be reported upon date of hire. Failure to report all drivers may Jeopardize Coverage if a claim should occur. Your policy contains an Unreported-Driver endorsement that limits your policy. Please read your policy very carefully. . . . <u>Unreported drivers or previously Excluded Drivers shall be subject to exclusion from the coverage. Therefore, no coverage will apply.</u> A current and acceptable MVR must be submitted for approval for all drivers. <u>I understand this</u>

---

[6] "A declarations page is usually the first page of an insurance policy, exclusive of the cover, and it contains limited information about the policy." Klopman v. Zurich American Ins. Co., 233 F. App'x 256, 257 (4th Cir. 2007).

[7] On its first page, the Declarations Page stated, in bold, "THE ORIGINAL COMPLETE POLICY INCLUDING TERMS, CONDITIONS, AND EXCLUSIONS, IS ISSUED TO YOUR ASSOCIATION WHERE IT IS AVAILABLE FOR INSPECTION. IN THE EVENT OF ANY CONFLICT BETWEEN THIS SUMMARY AND THE ACTUAL POLICY, THE TERMS OF THE ACTUAL POLICY WILL GOVERN." DTX 1, at 1.

4

> condition and will report all drivers upon hiring and adding vehicles. Failure to do so may result in denial of claims.

PTX 2, at 2 (emphasis added). The second document, entitled "Driver Guidelines," stated:

> All new drivers must be reported when hired. Please send MVR to us and we will provide quick help with acceptability. Accidents involving unreported drivers may be cause for adverse underwriting action.

Id. at 3 (emphasis added).

On March 12, 2018, National Insurance sent an email to plaintiffs entitled "Policy Change Request – Deol Transport, Inc." DTX 4, at 1. This email requested, among other policy changes, that Sukhwinder Singh ("Sukhwinder") be added to the policy as a covered driver, and stated that Sukhwinder had a valid Commercial Driver's License issued in New Jersey in 2015. Id. The email also included the notation "MVR attached."[8] Id.

On the same day, defendant hired Tirath Singh ("Singh") as a driver. PTX 15, at 1. Singh's application for employment required that he "[l]ist the nature and extent of [his] experience operating different types of motor vehicles (eg. buses, trucks, & trailers)." Id. Singh listed "5 years" of experience driving a "car." Id. Singh's application also required that he provide an "employment record" in the form of certain information "on all employers during the previous three years" and "for all employers [he] ha[d] driven a commercial vehicle for the last seven years prior 10 [sic] the initial three years (total of ten years employment record)." Id. at 2. Singh provided only "N/A" in response to this question, which the Court interprets as meaning

---

[8] Defendant's exhibit did not include the attached MVR. Therefore, the Court cannot determine from the exhibit exactly what additional information was presented to plaintiffs about Sukhwinder's qualifications. Defendant did submit a photocopy of a Commercial Driver's License issued to Sukhwinder; however, this photocopy differs from the information in the policy change request. DTX 14, at 1. The license submitted by defendant indicated that it was issued in California, not New Jersey, and that it was issued on December 14, 2016, not in 2015. Id.

5

that he had no employment history during the previous three years, and no employment history driving commercial vehicles during the previous ten years. Id. Singh's application was dated March 11, 2018, one day before he was hired. Id. at 3. Singh had a valid Commercial Driver's License issued in New Jersey on February 9, 2018, less than six weeks before he was hired. PTX 6, at 1. In the letter offering Singh a job, Deol wrote: "You will now conduct a road test with an experienced co-driver from our company and once we have been assured that your driving is well we shall have you sign our contracts." PTX 5, at 1.

On March 15, 2018, three days after he was hired, in what the Court presumes was his "road test," Singh was driving the 2017 tractor and towing the 2016 trailer covered by the policy in Amboy, California, when he lost control of the tractor and drove it and the trailer off the road.[9] PTX 7, at 9. As a result, both the 2017 tractor and the 2016 trailer were damaged. Id. It is uncontested that, as of March 15, 2018, Deol had not requested that Continental Insurance Agency approve Singh's Motor Vehicle Report ("MVR"), and there is no evidence in the record that Deol had informed either his broker National Insurance, Continental Insurance Agency, or plaintiffs that he had hired Singh. Deol testified that he first contacted National Insurance about Singh on March 16, 2018, the day after the accident. Accordingly, as of the date of the accident, Continental Insurance Agency had not approved Singh's MVR, and plaintiffs had not otherwise advised defendant that Singh had been added to the policy as a covered driver. DTX 22, at 1.

On March 23, 2018, eleven days after defendant hired Singh and eight days after the accident, National Insurance sent an email to plaintiffs entitled "Policy Change Request – Deol

---

[9] Contrary to Deol's representation that Singh's road test would be with an "experienced co-driver," the driver with Singh was Sukhwinder, who National Insurance had just requested be added to the policy on March 12, 2018, and who reported that he was sleeping during the accident. PTX 5, at 9; DTX 4, at 1.

6

Transport, Inc." DTX 8, at 1. Much like the email regarding Sukhwinder, this email contained Singh's name, date of birth, Commercial Driver's License information—including the incorrect statement that Singh had a valid Commercial Driver's License issued in New Jersey in 2017—and the following message:

> Hello Underwriters,
>
> Please add the driver listed below to the policy. Copy of the CDL & MVR is enclosed.
>
> Thank you,
> [National Insurance]

Id.[10] The email sought to add Singh to the policy effective March 14, 2018, the day before the accident. Id.

Two days later, on March 25, 2018, defendant filed a claim under the policy seeking compensation for the damage to the 2017 tractor and the 2016 trailer ("the claim"). DTX 19, at 2. The claim was subsequently assigned to Mike Najafi ("Najafi"), a claims adjuster at Synergy Adjusting Corporation. Id. at 1. As part of his investigation, Najafi asked Continental Insurance Agency whether defendant had submitted Singh's MVR for approval and whether it had been approved. Najafi determined that Singh's MVR had never been submitted to or approved by Continental Insurance Agency, after receiving an email from Continental Insurance Agency on April 10, 2018 stating "Driver [Singh] Not Approved." DTX 22, at 1. This information was repeated in an email sent on September 14, 2018 stating that Singh "was never reported [to] or approved by Continental." DTX 32, at 1.

---

[10] Once again, defendant's trial exhibit did not include the attached MVR, which deprives the Court of an opportunity to see exactly what additional information was presented to plaintiffs about Singh's qualifications.

7

On or around April 18, 2018, plaintiffs instructed Najafi to issue a denial of the claim.

PTX 13, at 1–2. In turn, Najafi sent defendant a "Letter of Denial," which stated:

> In reference to the above claim, we wish to advise you that we have been instructed by your Insurance Carrier, Underwriters at Lloyd's, London to issue a Letter of Denial in conjunction with this loss.
>
> Based upon the information thus far obtained, it appears that the driver involved, Tirath Singh was not an approved driver at the time of loss. We would refer to your policy for First Party Physical Damage policy number Z178324-004APD with effective dates April 1, 2017 – April 1, 2018, specifically to the additional clauses and endorsements applicable to this policy. We would refer your attention to the 'Driver Criteria' clause, which states:
>
> 'Every driver must have his/her Motor Vehicle Report (MVR) approved by Continental Insurance Agency within 7 days of their employment with the subject trucking firm. They must comply with the following Driver Criteria, and have a Single Valid Full Commercial Driving License, endorsed for the specific type of equipment operated at the time of loss or damage. If any of the Driver Criteria, including the following, is not fully complied with, then the driver is not acceptable or approved and will result in any claim or loss involving such unacceptable or unapproved driver as being not covered for any and all coverage's [sic] that might otherwise have been applicable.'
>
> As the driver of this vehicle was not an approved driver at the time of loss, we would advise that coverage will not attach itself to this claim.
>
> There may be other reasons why coverage does not apply. Certain Underwriters at Lloyd's, London do not waive any of their rights in not mentioning these here and hereby specifically reserve their rights to any further issues that may arise now or in the future.

Id.

On November 5, 2018, plaintiffs filed this declaratory judgment action against defendant in which they seek a judgment stating that the policy does not cover defendant's claim because (1) Continental Insurance Agency did not approve Singh's MVR within seven days of his employment with defendant, and (2) Singh had less than two years of commercial driving

experience at the time of his employment with defendant, both in contravention of the policy's Driver Criteria provision. Complaint ¶¶ 9, 14.

### B. Contested Facts

At trial, only two witnesses testified—Najafi and Deol. Based on his demeanor, experience, and consistent testimony, the Court finds that Najafi was a credible witness. He answered questions from both counsel quickly and confidently. He explained that he had worked as an insurance adjuster for 29 years, and adjusted approximately 500 claims per year. He testified as to the relationship among the various insurance entities involved with the policy and the claim, his investigation of the claim, and the reason for plaintiffs' decision to deny it.

Based on his demeanor and inconsistent testimony, the Court finds that Deol—who testified with the assistance of a Punjabi interpreter—was not a credible witness. For example, as to his demeanor, although Deol responded quickly and expansively to questions from his counsel, he responded slowly to questions from plaintiffs' counsel, and often provided unresponsive answers to those questions. As to the substance of his testimony, Deol's testimony was often inconsistent with prior pleadings, his own prior testimony, and his documentary evidence on various matters. For instance, defendant has asserted throughout this action that it was unaware that Singh's lack of commercial driving experience was an alternative basis for plaintiffs' denial of the claim until plaintiffs filed this declaratory judgment action in November 2018. See, e.g., Defendant's Motion for Leave to File First Amended Answer to Plaintiffs' Complaint [Dkt. 26], at 4; Defendant's Proposed Findings for Court [Dkt. 33], at 3. Yet Deol testified that an employee of National Insurance told him as much approximately one month after the claim was denied. Similarly, on direct examination, Deol tearfully testified that plaintiffs' denial of the claim has caused Deol Transport significant financial hardship. Yet on cross-

9

examination, he admitted that the number of drivers and trucks that Deol Transport employs has increased since the claim was submitted, from four drivers and three trucks as of March 2018 to eight drivers and five trucks as of the date of trial in September 2019. Additionally, Deol's testimony concerning Singh's driving experience was not credible. Deol testified that Singh had several years of commercial truck driving experience in India, yet defendant offered no evidence to corroborate that statement, which this Court finds to be highly suspect given that Singh, who was 31 years' old, indicated on his application for employment that his only driving experience was with a car, and that he had not been employed as a commercial driver in the last ten years. PTX 15, at 1–2.

Lastly, Deol testified that on March 16, 2018 he verbally asked an employee of National Insurance to add Singh to the policy, but he offered no corroborating evidence, and the documentary evidence shows that National Insurance did not request that plaintiffs add Singh to the policy until March 23, 2018. DTX 8, at 1. That March 23, 2018 date is significant. First, it is more than eleven days after Deol hired Singh. Second, it strongly suggests that Deol did not have Singh's MVR when he hired Singh. The Court reaches that conclusion based on how quickly National Insurance processed defendant's request that Sukhwinder be added to the policy. The email National Insurance sent to plaintiffs about Sukhwinder was dated March 12, 2018, asked for coverage effective March 12, 2018, and included Sukhwinder's MVR. DTX 4, at 1. If Deol had Singh's MVR and actually asked National Insurance to add Singh to the policy on March 16, 2018, the Court would have expected the email National Insurance sent to plaintiffs about Singh to have been dated March 16, 2018 or March 17, 2018, not March 23, 2018.

In addition to uncorroborated and unreliable testimony, Deol signed documents clearly containing inaccurate information, which further undercuts his credibility. For instance, on

defendant's application for insurance coverage, Deol misrepresented Kumar's driver's license and driving experience information by indicating that that Kumar had a valid Commercial Driver's License issued in New York—license number 933313604—and three years of driving experience. That information is inconsistent with his trial evidence, which included one Commercial Driver's License issued to Kumar. That license was issued in California, not New York, had a different license number, Y3791731, and had been issued fewer than three years ago, expiring on November 16, 2016. DTX 3, at 1; DTX 13, at 1.

## II. APPLICABLE LAW

Under Virginia law, "[c]ourts interpret insurance contracts, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." Erie Ins. Exch. V. EPC MD 15, LLC, 822 S.E.2d 351, 355 (Va. 2019) (quotation omitted). Accordingly, "a judicial interpretation [of an insurance contract] should conform to the plain meaning that reasonable insurers and insureds likely would have attributed to the words." Id. Yet "[t]he search for plain meaning does not myopically focus on a word here or a phrase there. Instead, it looks at a word in the context of a sentence, a sentence in the context of a paragraph, and a paragraph in the context of the entire agreement." Id. "Consequently, every word, clause, and provision of the policy 'should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein.'" Id. (quotation omitted).

"If the plain meaning is undiscoverable, Virginia courts apply the contra proferentem canon, which construes ambiguities against the drafter of the ambiguous language." Id. "In insurance cases, the disfavored drafter is almost always the insurer," a fact that "alone counsels caution because of the analytical ease with which a court may give up quickly on the search for a

11

plain meaning" by focusing on words or phrases in isolation. Id. Yet "[i]f [courts] took this approach, the contra proferentem thumb-on-the-scale approach would apply to nearly every interpretation of nearly every insurance policy," a "temptation" that the Virginia Supreme Court has consistently "recognized . . . and resisted." Id. Accordingly, "conflicting interpretations reveal an ambiguity only where they are reasonable." Id. "A 'reasonable' . . . interpretation is one of two competing interpretations that are 'equally possible' given the text and context of the disputed provision." Id. (quotation omitted).[11]

Failure to satisfy a condition precedent of an insurance policy is an affirmative defense on which the insured bears the burden of production and the insurer bears the burden of persuasion. Commercial Underwriters Ins. Co. v. Hunt & Calderone, P.C., 540 S.E.2d 491, 494 (Va. 2001); see also Builders Mut. Ins. Co. v. Dragas Management Corp., 709 F. Supp. 2d 441, 449 (E.D. Va. 2010). A condition precedent is "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." Condition Precedent, Black's Law Dictionary (11th ed. 2019).

Waiver of a condition precedent "is the intentional relinquishment of a known right, with both knowledge of its existence and an intention to relinquish it." Creteau v. Phoenix Assur. Co., 119 S.E.2d 336, 339 (Va. 1961); see also Hammond v. Pacific Life Mut. Ins. Co., 159 F. Supp. 2d 249, 256–57 (E.D. Va. 2001). "In the insurance context, therefore, a waiver occurs 'where the [insurer] expressly or impliedly leads the insured to believe it has given up a right under its policy,'" Hammond, 159 F. Supp. 2d at 257 (quotation omitted) (alteration in original); however,

---

[11] Additionally, in the event of an ambiguity on the face of the contract, "[i]f properly admitted extrinsic evidence renders clear and unambiguous what had been ambiguous, it is the duty of the court to construe the contract in light of such evidence." Atkinson Dredging Co. v. St. Paul Fire & Marine Ins. Co., 836 F. Supp. 341, 344 n.8 (E.D. Va. 1993); see also Commercial Union Ins. Co. v. Charleston Marine Leasing Co., 843 F. Supp. 124, 128 (E.D. Va. 1994).

"no one can acquiesce in a wrong while ignorant that it has been committed." Id. The insured bears the burden of proving the insurer's waiver of a condition precedent. Aetna Cas. & Sur. Co. v. Harris, 229 S.E.2d 84, 88 (Va. 1977).

III. ANALYSIS

In seeking coverage of its claim, defendant raises several arguments, none of which is successful. First, defendant argues that it satisfied the MVR approval requirement, but that even if it did not satisfy the MVR approval requirement, the requirement was not a condition precedent to coverage. Second, defendant argues that Singh satisfied the two-year commercial driving experience requirement, but that even if Singh did not satisfy the driving experience requirement, plaintiffs waived the requirement. Each of defendant's arguments will be addressed in turn.

With regard to the MVR approval requirement, defendant first asserts that Deol satisfied it when he verbally asked an employee of National Insurance to add Singh to the policy on March 16, 2018. Defendant maintains that although this request occurred one day after the accident, it occurred four days after Singh was hired, and thus within the seven-day window permitted by the policy. As previously discussed, the only evidence of this request was Deol's testimony, which the Court found not to be credible. Moreover, the uncontested evidence shows that National Insurance did not request that Singh be added to the policy until March 23, 2018, eleven days after Singh was hired, and well outside the seven-day window permitted by the policy, as evidenced by the email National Insurance sent to plaintiffs on that date. See DTX 8, at 1. Even more problematic for defendant is that the policy explicitly required that Continental Insurance Agency approve Singh's MVR within seven days of his employment. PTX 4, at 14. There is no evidence that anyone ever requested that Continental Insurance Agency approve

Singh's MVR. In fact, the evidence, consisting of the emails from Continental Insurance Agency to Najafi, affirmatively shows that Singh was neither reported to nor approved by Continental Insurance Agency. DTX 22, at 1; DTX 32, at 1. Accordingly, there is no evidence in this record showing that defendant satisfied the policy's MVR approval requirement with regard to Singh.

Defendant next asserts that, in any event, the MVR approval requirement is not a condition precedent to coverage; rather it is an independent requirement the violation of which the policy does not specifically address. This assertion is belied by the text of the policy. Although not contained within the section labeled "Exclusions," the MVR approval requirement was the first sentence of the Driver Criteria provision, which later clearly stated that "[i]f any of the Driver Criteria . . . is not fully complied with, then the driver is not acceptable or approved and will result in any claim or loss involving such unacceptable or unapproved driver as being not covered for any and all coverage's [sic] that might otherwise have been applicable." PTX 4, at 14. Similarly, the Declarations Page further provided that "[a]ll qualified drivers must be reported immediately upon hiring," and that "[u]nreported drivers could cause cancellation of policies or result in an unpaid claim." DTX 1, at 5. These provisions are entirely consistent with one another, and read together, they make clear that "the intention of the parties gleaned from the words they have used in the document" was that unreported or unapproved drivers would not be covered under the policy, and that to be covered under the policy a driver's MVR had to be approved by Continental Insurance Agency within seven days of the driver being hired. Erie. Ins., 822 S.E.2d at 355.

Defendant maintains that the policy's failure to tie a driver's unreported or unapproved status more clearly to the denial of coverage renders it ambiguous, and that the Court must construe that ambiguity in its favor. As discussed above, "conflicting interpretations reveal an

14

ambiguity only where they are reasonable," meaning that each is "equally possible given the text and context of the disputed provision." Erie. Ins., 822 S.E.2d at 355. On this record, the Court does not find that plaintiffs' and defendant's interpretations of the policy are "equally possible." Accordingly, the MVR approval requirement is a clear condition precedent to coverage, and plaintiffs have met their burden to demonstrate that defendant did not obtain such approval for Singh. As a result, the policy does not cover defendant's claim.[12]

With regard to the driving experience requirement, defendant first asserts that Singh satisfied it because he had several years of commercial truck driving experience in India. The only evidence of any such experience was Deol's uncorroborated testimony, which the Court did not find credible. Moreover, Singh's application for employment, which showed no commercial driving experience in the previous ten years, strongly suggests that he did not have the required two years of commercial truck driving experience. PTX 15, at 1–2. Deol provided no details whatsoever about Singh's employment history.[13] Singh's Commercial Driver's License was issued on February 9, 2018, just six weeks before he was hired by defendant, and there is no persuasive evidence that he had any commercial truck driving experience before that date.

---

[12] Even if there were an ambiguity on the face of the policy, extrinsic evidence would in turn "render[] clear and unambiguous what had been ambiguous." Atkinson Dredging, 836 F. Supp. at 344 n.8 (E.D. Va. 1993). Deol signed two documents from his broker, National Insurance, each of which unequivocally tied a driver's unreported or unapproved status to denial of coverage. For instance, the "Agreement to Report All Drivers and Vehicles to Policies" stated that "[u]nreported drivers or previously excluded drivers shall be subject to exclusion from coverage. Therefore, no coverage will apply." PTX 2, at 2.

[13] Deol attempted to bolster his testimony by testifying that he investigated Singh's background to confirm his commercial truck driving experience in India. He provided no details about that investigation such as the names of the employers, the dates of employment, or the type of commercial vehicle driven. Given that Singh's application for employment was dated March 11, 2018 and he was offered a job the next day, Deol could not have conducted much investigation in that 24-hour period. PTX 15, at 1; PTX 5, at 1.

Accordingly, defendant also did not satisfy the driving experience requirement, an undisputed condition precedent to coverage, when it hired Singh.[14]

Defendant next asserts—without any citation to case law—that in any event, plaintiffs waived the driving experience requirement by failing to present it as an alternative basis for denial of coverage until this declaratory action, as well as by approving other drivers—Kumar and Sukhwinder—who did not satisfy the requirement. Neither argument has merit because neither evinces "the intentional relinquishment of a known right, with both knowledge of its existence and an intention to relinquish it." Creteau, 119 S.E.2d at 339.

Contrary to defendant's first waiver argument, and as previously discussed, Deol testified that an employee of National Insurance told him one month after the claim was denied that the driving experience requirement was an alternative basis for the denial of coverage, well before this declaratory action was filed in November 2018. Moreover, the Letter of Denial, sent from Najafi to defendant on April 18, 2018, explicitly referred to the Driver Criteria provision and stated that "[t]here may be other reasons [in addition to the MVR approval requirement] why coverage does not apply," and that plaintiffs "do not waive any of their rights in not mentioning these here." PTX 13, at 1–2. The letter also explicitly "reserve[d] their rights to any further issues that may arise now or in the future." Id. "An insurer can waive its right to deny coverage by failing to reserve its rights, or it may reserve its right to deny coverage" as long as the

---

[14] Defendant briefly argues that the term "driving experience" is ambiguous, and should be construed in its favor to include any experience Singh gained while training to get his Commercial Driver's License. As previously discussed, "conflicting interpretations reveal an ambiguity only where they are reasonable," meaning that that each is "equally possible given the text and context of the disputed provision." Erie. Ins., 822 S.E.2d at 355. On this record, the Court does not find that defendant's broad interpretation of "driving experience" is "equally possible" as compared to plaintiffs' license-based interpretation of "driving experience." Moreover, defendant failed to produce any evidence concerning Singh's training. Therefore, there is no evidence or even suggestion that his training took two years.

reservation is "communicated to the insured, . . . fairly inform[s] him [or her] of the insurer's position, and notice thereof [is] timely given." KitBar Ents., LLC v. Liberty Ins. Underwriters, Inc., 291 F. Supp. 3d 758, 768 (E.D. Va. 2018). On this record, the Court finds that the Letter of Denial sufficiently communicated plaintiffs' position regarding the bases for the denial of coverage to defendant and therefore plaintiffs did not waive the driving experience requirement.

Defendant's second and more substantial waiver argument claims that plaintiffs added other drivers to the policy, specifically Kumar and Sukhwinder, who did not satisfy the two-year commercial driving experience requirement.[15] "The insured bears the burden of proving the insurer's waiver of a condition precedent." Aetna, 229 S.E.2d at 88. The evidence defendant submitted undercuts its claim by showing that defendant, either by Deol or his broker National Insurance, represented to plaintiffs that these drivers had the required experience. As previously discussed, Deol signed defendant's application for insurance, which stated that Kumar had three years of commercial truck driving experience. DTX 3, at 1. Similarly, the email sent from National Insurance to plaintiffs requesting the approval of Sukhwinder's MVR stated that his Commercial Driver's License had been issued in 2015, which would have given him more than two years of commercial truck driving experience. DTX 4, at 1. "[N]o one can acquiesce in a wrong [and thereby intentionally waive a right, such as the occurrence of a condition precedent] while ignorant that it has been committed," and this evidence demonstrates that defendant has not shown that plaintiffs were aware of Kumar and Sukhwinder not satisfying the two-year

---

[15] Defendant's failure to include in its exhibits the MVRs for these drivers deprived the Court of an opportunity to determine whether plaintiffs were on notice of any facts that would show that these drivers lacked the required commercial driving experience. Because there is no evidence before the Court that the two commercial driver's licenses, which support defendant's argument, were shown to plaintiffs, defendant's waiver argument fails.

commercial driving experience requirement. Hammond, 159 F. Supp. 2d at 257. Because there is no reliable evidence in this record that plaintiffs "intentional[ly] relinquish[ed] . . . a known right, with both knowledge of its existence and an intention to relinquish it." Creteau, 119 S.E.2d at 339, defendant has failed to meet its burden of showing that plaintiffs waived the driving experience requirement.

## IV. CONCLUSION

Plaintiffs have clearly met their burden to show that defendant failed to satisfy two independent requirements for coverage of the driver involved in the March 15, 2018 accident. Specifically, defendant failed to obtain approval of Singh's MVR from Continental Insurance Agency within seven days of hiring Singh, and Singh did not have the required two years of commercial truck driving experience. The insurance policy criteria for driver coverage were clear and unambiguous and defendant did not produce any credible evidence either that it satisfied these criteria or that plaintiffs waived these criteria.

Accordingly, the Court will enter a judgment in plaintiffs' favor by an Order to be issued with this Memorandum Opinion.

Entered this 24 day of October, 2019.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge